# IN RE SHAIESHA O.*
## (AC 25881)

Bishop, McLachlan and Gruendel, Js.

Argued October 14, 2005—officially released January 3, 2006

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Glen A. Canner,* for the appellant (respondent father).

*Jessica B. Rajotte,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Susan T. Pearlman,* assistant attorney general, for the appellee (petitioner).

*Lucy W. Rankin,* for the minor child.

*Opinion*

BISHOP, J. The rights of children to protection from harm and to placement in a nurturing environment are core values of our society. So, too, is the right of parents to raise their children without undue government interference. When these values conflict, the court's task is as Herculean as it is vital. Since the severance by the state of a parent-child relationship implicates fundamental rights and the termination of a parent's rights is a creature of statute, it is "essential that a parental termination can be decreed only in both strict and literal compliance with the applicable state statutes . . . ." (Internal quotation marks omitted.) *In re Eden F.,* 48 Conn. App. 290, 321, 710 A.2d 771 (1998), rev'd on other grounds, 250 Conn. 674, 741 A.2d 873 (1999). In the case at hand, the respondent father appeals from the judgment of the trial court terminating his parental rights with respect to his minor daughter, Shaiesha.[1] The dispositive issue on appeal is whether the record

---

[1] The parental rights of Shaiesha's mother were also terminated. Only the respondent father has appealed. We therefore refer to him in this opinion as the respondent.

supports a finding that the department of children and families (department) made reasonable efforts to reunify the respondent with his daughter in accordance with General Statutes § 17a-112 (j) before the petitioner, the commissioner of children and families (commissioner), filed the petition to terminate the respondent's parental rights.[2] Because the department failed, completely, in its responsibility, we must reverse the judgment of the trial court.

The following facts and procedural history are relevant to our discussion of the issues on appeal. Shaiesha was born on April 17, 2002. Although Shaiesha's mother named an individual other than the respondent as Shaiesha's father at her birth and on her birth certificate, Shaiesha's biological father is the respondent. Two days after Shaiesha's birth, on April 19, 2002, the commissioner invoked a ninety-six hour hold[3] on behalf of Shaiesha because she tested positive for cocaine at birth. On April 22, 2002, after the commissioner had filed a neglect petition, an order of temporary custody was granted by the Juvenile Court. On April 29, 2002, the court sustained the order of temporary custody. Subsequently, on August 26, 2002, the court adjudicated Shaiesha neglected, but vacated the order of temporary custody and placed Shaiesha in the care of her mother at

[2] On appeal, the respondent also claims that the court improperly determined that (1) the department made reasonable efforts to reunify him with his daughter at any time in accordance with General Statutes § 17a-112 (k) (1), (2) he abandoned his daughter, (3) he did not have an ongoing relationship with his daughter and (4) he was not prevented from maintaining a meaningful relationship with his daughter due to the delay caused by the department in resolving paternity issues. Because we determine that the department failed to make reasonable efforts before the filing date of the petition to reunify the respondent with his daughter, or failed to present evidence from behaviors or factors that predated the filing of the termination petition that such efforts would be futile, we need not reach those other issues raised by the respondent.

[3] General Statutes § 17a-101g permits the commissioner to remove a child from unsafe surroundings under a ninety-six hour hold.

an inpatient substance abuse program under protective supervision. From the time of her removal in April, 2002, until her return to her mother in August, 2002, Shaiesha remained in the same foster home.

During October, 2002, several legal actions took place regarding Shaiesha. On October 10, 2002, the commissioner invoked a second ninety-six hour hold on behalf of Shaiesha, and on October 11, 2002, another order of temporary custody was granted. Additionally, on October 15, 2002, the commissioner moved for paternity testing of the individual the child's mother initially named as being the father. On October 16, 2002, the order of temporary custody was sustained, and Shaiesha was returned by the commissioner to her original foster home.

On December 10, 2002, the court committed Shaiesha to the care and custody of the commissioner until further order of the court. Additionally, the court granted the commissioner's motion for paternity testing of the individual the child's mother initially named as being the father. Throughout the entirety of the proceedings, from the date of Shaiesha's birth until December, 2002, the mother maintained to the commissioner that the individual she originally identified was Shaiesha's father. On December 10, 2002, the mother reported for the first time that she believed that the respondent was Shaiesha's father. On February 26, 2003, the results of the paternity test regarding the individual she initially named proved that he is not Shaiesha's biological father.

On March 17, 2003, Nadine Losquadro, the department social worker assigned to the case, attempted for the first time to contact the respondent. She left him a message asking him to return the call regarding a possible paternity test. She left the respondent another message on March 21, 2003. On April 2, 2003, the respondent contacted Losquadro and agreed to take the pater-

nity test. On April 15, 2003, the commissioner filed a motion for paternity testing of the respondent, which was granted by the court on April 30, 2003. The respondent called Losquadro on May 5 and 19, 2003, to ascertain when and where the paternity test would be done. The paternity test was scheduled for May 21, 2003. On June 4, 2003, a court services officer notified the commissioner that the paternity test indicated that the respondent is the father of Shaiesha. On June 10, 2003, in response to the respondent's telephone call to her, Losquadro informed the respondent that he is the father of Shaiesha.

One week earlier, on June 3, 2003, prior to learning the results of the paternity test, the commissioner filed a petition to terminate the parental rights of the child's mother and the respondent. In the petition, the commissioner alleged that the department had made reasonable efforts to reunify Shaiesha with him and that he was unable or unwilling to benefit from reunification efforts. As grounds for termination, the commissioner alleged that the respondent had abandoned Shaiesha and that there was no ongoing parent-child relationship between him and Shaiesha. The respondent filed an objection on July 9, 2003. Following a hearing on the petition held over the course of five days, the court, on September 17, 2004, terminated the respondent's parental rights. This appeal followed.

Although the respondent has raised several issues on appeal, we need address only the respondent's claim that the department failed to undertake the reasonable efforts required by § 17a-112 (j) (1) to reunite him with his daughter before the filing of the petition because that claim is dispositive of his appeal. We conclude that the department failed to undertake such efforts and accordingly reverse the judgment on that basis.

"In order to terminate a parent's parental rights under § 17a-112, the petitioner is required to prove, by clear

and convincing evidence, that: (1) the department has made reasonable efforts to reunify the family; General Statutes § 17a-112 (j) (1); (2) termination is in the best interest of the child; General Statutes § 17a-112 (j) (2); and (3) there exists any one of the seven grounds for termination delineated in § 17a-112 (j) (3)." *In re Samantha C.*, 268 Conn. 614, 628, 847 A.2d 883 (2004).

"A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights [under General Statutes § 17a-112 (j)] exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interests of the child." (Internal quotation marks omitted.) *In re Jermaine S.*, 86 Conn. App. 819, 827, 863 A.2d 720, cert. denied, 273 Conn. 938, 875 A.2d 43 (2005).

As this court has noted, "[t]here is a distinction between a finding on reasonable reunification efforts under § 17a-112 (j) and consideration of the same under § 17a-112 (k). Section 17a-112 (j) (1) requires the court to make a finding by clear and convincing evidence in the adjudicatory phase concerning the reasonable efforts made by the department of children and families . . . to reunify the child with the parent as a prerequisite to terminating parental rights. . . . A court need not make that finding, however, if the evidence establishes that the parent is unable or unwilling to benefit from reunification efforts or if the court determines at a hearing pursuant to General Statutes § 17a-110 (b) or General Statutes § 17a-111b that such efforts are inappropriate. . . ."[4]

---

[4] In this case, there was no judicial determination that reunification efforts were inappropriate pursuant to §§ 17a-110 (b) or 17a-111b.

"By contrast, [§] 17a-112 (k) requires the court in the dispositional phase to make written findings regarding seven statutory factors, including [t]he timeliness, nature and extent of services offered, provided and made available to the parent and the child by an agency to facilitate the reunion of the child with the parent and whether the department has made reasonable efforts to reunite the family . . . ." (Citations omitted; internal quotation marks omitted.) *In re Victoria B.*, 79 Conn. App. 245, 257–58, 829 A.2d 855 (2003).

"The standard for reviewing reasonable efforts has been well established by the Appellate Court. Turning to the statutory scheme encompassing the termination of the parental rights of a child committed to the department, [§ 17a-112] imposes on the department the duty, inter alia, to make reasonable efforts to reunite the child or children with the parents. The word reasonable is the linchpin on which the department's efforts in a particular set of circumstances are to be adjudged, using the clear and convincing standard of proof. Neither the word reasonable nor the word efforts is, however, defined by our legislature or by the federal act from which the requirement was drawn. . . . [R]easonable efforts means doing everything reasonable, not everything possible. . . . The trial court's determination of this issue will not be overturned on appeal unless, in light of all of the evidence in the record, it is clearly erroneous." (Internal quotation marks omitted.) *In re Samantha C.*, supra, 268 Conn. 632.

As noted, in determining whether the department has made reasonable efforts to reunify a parent and a child or whether there is sufficient evidence that a parent is unable or unwilling to benefit from reunification efforts, the court is required in the adjudicatory phase to make its assessment on the basis of events preceding the date on which the termination petition was filed. See also

Practice Book § 35a-7 (a).[5] In this instance, not only did the court not make the requisite finding, such a finding, if made, would find no support in the record.[6]

In examining the reasonableness of the department's actions, we evaluate its efforts to reunify Shaiesha with the respondent as of June 3, 2003, the date the petition to terminate his parental rights was filed. Despite learning on December 10, 2002, that the respondent might be Shaiesha's father, the department did not make any attempt to contact him until March 17, 2003, when Losquadro left him a message regarding the taking of a paternity test. For the approximately ten week period from the first contact the department had with the respondent until the filing of the petition, Losquadro had two brief telephone conversations with the respondent regarding his paternity test. She testified that the first time that she had a discussion with him regarding a possible placement plan for Shaiesha was during June, 2003, *after* the filing of the petition to terminate the respondent's parental rights. She stated that as of June, 2003, the department had not facilitated any visitation between the respondent and Shaiesha. Significantly, she stated that if the respondent had requested visitation, she would have told him that he couldn't see Shaiesha until his paternity was confirmed. Thus, it is plain that prior to the filing of the petition to terminate

[5] Practice Book § 35a-7 (a) provides: "In the adjudicatory phase, the judicial authority is limited to evidence of events preceding the filing of the petition or the latest amendment, except where the judicial authority must consider subsequent events as part of its determination as to the existence of a ground for termination of parental rights."

[6] In its memorandum of decision, the court did make some comments regarding the department's efforts to reunify Shaiesha with the respondent after the filing of the petition to terminate the respondent's parental rights. Although those efforts could fairly be considered by the court in the dispositional phase of the proceedings as part of the findings required by General Statutes § 17a-112 (k), they do not support a finding that reasonable efforts to reunify were made by the department prior to the filing of the petition, as required in the adjudicatory phase.

the respondent's parental rights, the department made no efforts to foster a relationship between Shaiesha and the respondent because his paternity had not been established. However understandable that posture might be from a dispositional perspective, the department's disinclination to encourage a relationship between the respondent and Shaiesha can hardly be taken as evidence of an effort to reunify the two.[7]

Given that evidentiary underlayment, we are not, as a reviewing court, able to find any support in the record for a finding that the department made any efforts, let alone reasonable ones, to reunify Shaiesha with the respondent before the commissioner sought to terminate his parental rights. To the contrary, it is plain that if the department was ever willing to make any efforts to unite Shaiesha and the respondent, it was not until after the commissioner petitioned the court to terminate his parental rights. In sum, it was not until after the commissioner had already filed the petition to terminate the respondent's parental rights, in which she represented to the court that the department had fulfilled its statutory duty to make efforts to reunify, that the department ever discussed anything with the respondent other than its desire that he submit to paternity testing. Indeed, the record demonstrates that until the paternity of the individual the mother first identified as the father was refuted by testing, the department had directed its attention to him by facilitating his periodic visitation with Shaiesha. Additionally, since the record reflects that the department had not discussed with the respondent a placement plan for Shaiesha until after the commissioner had moved to terminate his parental

---

[7] General Statutes § 17a-112 (j) provides that the department may prove that a parent is unwilling or unable to benefit from reunification efforts in lieu of making efforts to reunify. Although the commissioner alleged in the petition that the respondent was unwilling or unable to benefit from reunification efforts, she offered no evidence in support of her claim, nor did the court make such a finding as to the adjudicatory phase.

rights, the record is devoid of any support for its contention that he was unable or unwilling to benefit from reunification efforts as of the date the petition was filed. Accordingly, we conclude that there is inadequate evidentiary support in the record for a finding that the department made the statutorily required efforts to reunify Shaiesha with the respondent or that he was unwilling or unable to benefit from such efforts.

The judgment is reversed and the case is remanded with direction to render judgment dismissing the petition to terminate the respondent's parental rights.

In this opinion the other judges concurred.