# IN RE JAIDEN S.*
## (AC 30703)

Bishop, DiPentima and Peters, Js.**

Argued March 10—officially released May 4, 2010

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** The listing of judges reflects their seniority status on this court as of the date of oral argument.

*Rosemarie T. Weber*, for the appellant (respondent father).

*Amor C. Rosario*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

*Patricia M. Lyga*, for the minor child.

*Opinion*

PETERS, J. General Statutes § 17a-112 (j) prescribes the evidentiary burden that the department of children and families must shoulder to terminate the parental rights of a parent whose child has been committed to the custody of the department. In this case, a father challenges the sufficiency of the evidence to establish the statutory requirements relating to past departmental efforts for his reunification with his child and to future prospects for timely reunification with the child. We affirm the judgment of the court finding that the department presented clear and convincing evidence on both issues.

On August 1, 2007, the commissioner (commissioner) of the department of children and families (department) filed a petition pursuant to General Statutes §§ 17a-112 (j) (1) and 17a-112 (j) (3) to terminate the parental rights of Jaiden S.'s mother and father. After an evidentiary

hearing, the trial court, *Olear, J.*, held that the commissioner had made the requisite showing for both parents. Only the father has appealed.[1]

The uncontested history of this case begins on October 29, 2006, when the commissioner took temporary custody of Jaiden S., when he was one month old, because of concerns about his physical well-being. Immediately thereafter, on November 2, 2006, in accordance with § 17a-112 (j) (3) (B) (ii),[2] each parent was "provided specific steps to take to facilitate the return of the child to the parent pursuant to [General Statutes] § 46b-129 . . . ."[3] On November 17, 2006, after a contested hearing,[4] the court, *Bear, J.*, sustained the order for temporary custody. On April 11, 2007, after a further contested hearing,[5] the court, *Goldstein, J.*, adjudicated the child to have been neglected and committed him to the commissioner's care and custody. To date, the child remains committed to foster care.

In the present proceedings, in addressing the adjudicatory phase of the petition for termination of the father's parental rights, the court found that the commissioner had presented clear and convincing evidence

[1] We note that pursuant to Practice Book § 67-13, the attorney for the minor child filed a statement adopting the brief of the commissioner.

[2] General Statutes § 17a-112 (j) (3) (B) provides for the termination of parental rights when the child "(i) has been found by the Superior Court or Probate Court to have been neglected or uncared for in a prior proceeding, or (ii) is found to be neglected or uncared for and has been in the custody of the commissioner for at least fifteen months and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

[3] General Statutes § 46b-129 (j) provides in relevant part: "Upon finding and adjudging that any child or youth is uncared-for, neglected or dependent . . . [t]he court shall order specific steps that the parent must take to facilitate the return of the child or youth to the custody of such parent. . . ."

[4] The father did not participate in this hearing.

[5] The father failed to appear to contest the neglect petition.

that (1) the department had made reasonable efforts to reunify the father with his child within the meaning of § 17a-112 (j) (1), and (2) the father had failed to achieve a sufficient degree of personal rehabilitation within the meaning of § 17a-112 (j) (3) (B). The father's appeal challenges the sufficiency of the evidence to support these findings. To prevail on these claims, the father must establish that the findings were clearly erroneous. *In re Melody L.*, 290 Conn. 131, 145, 962 A.2d 81 (2009). We are not persuaded by the father's claims.

I

HISTORICAL FACTS

Before addressing the specific grounds on which the commissioner based her petition for the termination of the father's parental rights, the trial court made extensive findings of fact about the father's personal history. These facts are undisputed.

The father, who is now forty-three years old, was one of several siblings who lived in a home in which the parents engaged in acts of assault, breach of the peace and domestic violence that led to their incarceration. He also reported being molested when he was approximately seven years old.

Although the father did not graduate from high school, he subsequently obtained a general equivalency diploma (GED). He was honorably discharged after six years of service in the Marine Corps. Since 2001, except for periods of incarceration, he has worked as a truck driver.

Between 2001 and 2005, the father was incarcerated for the crimes of enticing a minor in violation of General Statutes § 53a-90a and risk of injury to a child in violation of General Statutes § 53-21 (a) (1). These convictions arose out of his having engaged in sexually

inappropriate internet chats with an eleven or twelve year old girl whom he continued to contact even after he had discovered her age. He was ordered to register as a sex offender for a term of ten years pursuant to the provisions of General Statutes § 54-251. During his incarceration, the father completed the tier I and tier II substance abuse series and the basic and advanced alternative to violence project workshops.

The father's criminal history also includes arrests for unlawful restraint in the first degree, assault in the third degree, reckless endangerment in the first degree, disorderly conduct, assault in the second degree, risk of injury to a child, sexual assault in the second degree, larceny in the fourth degree, possession of burglar's tools and violations of probation. He has served time in prison as a result of these charges.

When the commissioner took custody of the child, the father, who was living out of state, requested a paternity test. The test, which was administered on January 3, 2007, approximately three months after the commissioner had taken custody of the child, confirmed that he was the child's father.

During the pendency of these termination proceedings, the father was arrested, at the mother's request, for criminal violation of a protective order and for harassment in the second degree for an incident that occurred on May 30, 2007. He also was arrested on June 24, 2007, for disorderly conduct and for use of the mother's motor vehicle without her permission. Finally, on September 22, 2008, the father was arrested pursuant to § 54-251 for failure to register as a sex offender, a class D felony.[6]

[6] The court denied the father's posttrial motion for rectification of the record to take note of the fact that, subsequent to the trial, "the registry issue [raised by the father's failure to register] was disposed of with a nolle." The court explained that the nolle was irrelevant to the court's decision because the arrest was itself evidence of involvement with the criminal justice system. The father has appealed from this ruling without presenting

II

## REUNIFICATION

Addressing the sufficiency of the department's efforts to reunify the father with his child pursuant to § 17a-112 (j) (1), the court found that the department had made numerous referrals and offered a variety of services to the father. These reunification efforts included referrals for case management services, substance abuse evaluation, parenting education, referral to a DOVE program for domestic violence issues, which the father did not complete until September 11, 2008,[7] and a referral for individual counseling that the father did not reengage until September, 2008.

The court acknowledged that some of the father's delay in accessing these services related to his uncertainty about his paternity of the child. The court, however, rejected his claim that the department had failed to make reasonable efforts to contact him about the termination proceedings against him. Moreover, it held that the father significantly had impaired his access to relevant services by failing to disclose to the department, to the court evaluator and even to his own evaluator, that he was a registered sex offender.

In addition to finding that this record established that the department had made reasonable efforts to reunify the father with his child, the court found by clear and convincing evidence that the commissioner had established that the father is "unable or unwilling to benefit from reunification services." The court relied on the

a reasoned argument with supporting authority to establish why the court's action was improper. We are persuaded that the court's decision was not an abuse of its discretion.

[7] The father was referred to the DOVE program in June and July, 2007, and did not engage with the program for approximately four months. After missing some sessions, he was discharged from the program, but he reengaged in February, 2008, and followed through to completion in September, 2008.

holding of this court in *In re Shaiesha O.*, 93 Conn. App. 42, 47, 887 A.2d 415 (2006), that "[a] court need not make [a reasonable efforts] finding . . . if the evidence establishes that the parent is unable or unwilling to benefit from reunification efforts . . . ." Our Supreme Court recently cited this holding in *In re Jorden R.*, 293 Conn. 539, 553, 979 A.2d 469 (2009).

The father's disagreement with the court's findings focuses on the alleged inadequacy of remedial services during the period of October 29, 2006, through March, 2007, when he was living in another state and contesting his paternity of the child. Moreover, in light of the department's delay in providing remedial services once his paternity had been established, he maintains that the commissioner acted prematurely in initiating a termination petition on August 1, 2007, before he had had the opportunity to access and to complete many of the programs that had been recommended to him.[8]

This argument cannot succeed because it fails to address the significance that the court attached to the father's failure to be forthright in his reporting of relevant facts of his personal history to the department. That failure was a sufficient basis for the court's finding that he is unable or unwilling to benefit from further remedial services. That finding in turn was a sufficient basis for termination of his parental rights pursuant to *In re Shaiesha O.*, supra, 93 Conn. App. 47.

## III

## PERSONAL REHABILITATION

In addition to its findings on reunification, the court also found that the commissioner had established, by

[8] The commissioner disputes the implied representation that the department discontinued providing services to the father after the filing of the petition for termination of his parental rights. Notably, the trial court's memorandum of decision describes a parenting program that the father completed in December, 2007, a program for domestic violence that, after an initial failure, he completed in September, 2008, and a counseling program in which he engaged, first in May, 2008, and then in September, 2008.

clear and convincing evidence, that, after the child had been committed to the custody of the commissioner, the father had failed to achieve a sufficient degree of personal rehabilitation within the meaning of § 17a-112 (j) (3) (B) (ii). The court acknowledged that the father had completed several remedial programs and had complied with many of the specific steps for rehabilitation that had been prescribed for him but noted that these findings did not definitively establish the father's rehabilitation. See *In re Luis C.*, 210 Conn. 157, 167–68, 554 A.2d 722 (1989). The court found that the evidence at trial had established that there was no basis to believe that, within a reasonable period of time, the father would achieve a degree of rehabilitation sufficient to believe that he could resume his role as parent in the life of the child. See *In re Stanley D.*, 61 Conn. App. 224, 230, 763 A.2d 83 (2000).

The crucial evidence on the issue of rehabilitation came from competing expert appraisals of the father's ability to take responsibility for his inappropriate past behavior. Rejecting the contrary view of the father's psychological evaluator, David M. Mantell, the court found persuasive the expert opinion of psychologist Stephen M. Humphrey, the departmental evaluator, that the father's rehabilitation was problematic because the father had not yet fully acknowledged his history of interpersonal aggression and inappropriate sexual conduct toward children. The court found the father's arrest for failure to register as a sex offender on September 22, 2008, to be collaborative evidence of the father's continuing failure to address these issues.

The court also considered the time frame within which the father might foreseeably achieve a sufficient degree of rehabilitation to take responsibility for the care of the child. The court cited Humphrey's cautionary observation that one to one and one-half years of rehabilitation would be necessary before the process

of reunification with the child could *begin*. The court found that, in view of Humphrey's testimony, "taking into consideration the findings made . . . together with the age of the child, the time he has spent in the care of the department and his need to be raised in a stable and secure home, and considering, also . . . the progress and lack of progress made by the father and his unwillingness or inability to address his own needs . . . the father has failed to rehabilitate to a degree so as to allow any belief that he could, in any reasonable time, resume, or assume, his role as a parent for [the child]." Accordingly, it held that the commissioner had established the statutory ground of failure to achieve a sufficient degree of personal rehabilitation to support termination of the father's parental rights.

The father's disagreement with this finding does not take issue with any of the specific facts on which the court relied. He maintains, instead, that the court did not assign sufficient significance to the fact that, once his paternity had been established, he made significant progress toward becoming a better parent. Further, he relies on the more optimistic assessment of his own independent evaluator, Mantell.

As an appellate court, we cannot, however, set aside the findings of fact of the trial court unless they are clearly erroneous. *In re Melody L.*, supra, 290 Conn. 145. The father has not met that heavy burden in this case. The court did not disagree with the father's representation that he has taken the birth of his son to heart and has made significant progress toward addressing his personal problems. The court found, however, as the record demonstrates, that the father's record of progress has not been flawless and that his child needs permanence now. We are bound by these findings.

The judgment is affirmed.

In this opinion the other judges concurred.