******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# EITAN RUBIN ET AL. *v.* BARNETT BRODIE ET AL.
## (AC 46348)

Elgo, Moll and Prescott, Js.

*Syllabus*

The plaintiffs appealed from the trial court's judgment dismissing their action for lack of subject matter jurisdiction. The plaintiffs claimed, inter alia, that the court improperly concluded that the individual plaintiffs, who are members of the plaintiff limited liability companies (LLCs), lacked standing to maintain a derivative action to enforce the rights of the plaintiff LLCs. *Held:*

The trial court improperly concluded that the individual plaintiffs lacked standing to maintain a derivative action to enforce the rights of the plaintiff LLCs, as that court had properly determined that the complaint sufficiently alleged that it would have been futile for the plaintiffs to demand that the defendant B, the manager of the plaintiff LLCs, cause the plaintiff LLCs to commence the action, the allegations in the complaint satisfied the pleading requirements set forth in the applicable statutes (§§ 34-271a and 34-271c), and there was no requirement in the language of § 34-271a or § 34-271c that the individual plaintiffs receive consent from the plaintiff LLCs to bring a derivative suit.

The trial court properly concluded that the plaintiff LLCs lacked standing to maintain their direct action because the LLCs' operating agreements established that only the LLCs' manager had the authority to commence litigation, not the LLCs' respective members, and, even if the individual plaintiffs, as members of the LLCs, had received authorization from the LLCs to commence the action, they would not have been empowered, pursuant to the language of the operating agreements of the plaintiff LLCs, to initiate a direct action on behalf of the plaintiff LLCs.

The trial court properly concluded that the individual plaintiffs lacked standing to maintain their direct action, the individual plaintiffs' having alleged injuries that were solely the result of injuries suffered by the plaintiff LLCs. This court declined to review the plaintiffs' claim that the trial court's failure to treat the defendants' motions to dismiss as motions to strike to allow them to replead and expressly allege demand futility was improper, in light of this court's conclusion that the trial court properly inferred demand futility.

Argued May 15—officially released October 15, 2024

*Procedural History*

Action to recover damages for, inter alia, breach of fiduciary duty, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the court, *Jongbloed, J.*, granted the defendants' motions to dismiss and rendered judgment thereon, from which the plaintiffs appealed to this court. *Reversed in part; further proceedings.*

*Benjamin Gershberg*, with whom, on the brief, was *Ridgely Whitmore Brown*, for the appellants (plaintiffs).

*Jack G. Steigelfest*, for the appellees (named defendant et al.).

*Joseph J. Cherico*, with whom were *Richard P. Colbert*, and, on the brief, *Adam M. Swanson*, and *Demery J. Ormrod*, for the appellee (defendant CoreVest American Finance Lender, LLC).

*Christina S. Cassidy*, with whom, on the brief, was *Ashley A. Noel*, for the appellee (defendant Lawrence Levinson).

*Opinion*

PRESCOTT, J. The plaintiffs, Eitan Rubin (Rubin), individually, Eitan Rubin by power of attorney and by proxy for George Rohr (Rohr), Reuven Gidanian, and three limited liability company plaintiffs, E.R. Holdings, LLC, L.E. Ventures, LLC, and Whalley Group, LLC (collectively, plaintiff LLCs), appeal from the judgment of dismissal rendered by the trial court in favor of the defendants, Barnett Brodie, CoreVest American Finance Lender, LLC, formerly known as Colony American Finance Lender, LLC (CoreVest), 5 Arch Funding Corporation (5 Arch), Attorney Lawrence Levinson and

five business entities that Brodie owns or controls (Brodie defendants).[1] The plaintiffs raise four claims on appeal. First, they claim that the court improperly concluded that the individual plaintiffs, who are members of the plaintiff LLCs, lacked standing to maintain a derivative action to enforce the rights of the plaintiff LLCs even though it determined that the plaintiffs sufficiently had alleged that it would have been futile for them to demand that the plaintiff LLCs' manager, Brodie, cause the LLCs to bring the action. See General Statutes §§ 34-271a and 34-271c.[2] Second, they claim that the court improperly concluded that the individual plaintiffs had not "fairly or adequately alleged authorization to bring suit" in the plaintiff LLCs' names and, thus, improperly determined that the plaintiff LLCs lacked standing to maintain a direct action "in their own right." Third, they claim that the court improperly concluded that the individual plaintiffs lacked standing to maintain their direct action because it found the injuries they alleged "resulted solely from the injuries to the [plaintiff] LLC[s]." Finally, they claim that the court improperly declined to treat the defendants' motions to dismiss as motions to strike to allow them to replead.

We agree with the plaintiffs' first claim and conclude specifically that the court improperly determined that

---

[1] The Brodie defendants include Brodie and the following defendant entities: Reichman Brodie Real Estate, LLC; RBC DE2, LLC; Sperry Group DE2, LLC; Riley Group DE2, LLC; and TZ DE2, LLC.

[2] General Statutes § 34-271a provides: "A member may maintain a derivative action to enforce a right of a limited liability company if: (1) The member first makes a demand on the other members in a member-managed limited liability company, or the managers of a manager-managed limited liability company, requesting that they cause the company to bring an action to enforce the right, and the managers or other members do not bring the action within ninety days; or (2) a demand under subdivision (1) of this section would be futile."

General Statutes § 34-271c provides: "In a derivative action, the complaint must state with particularity: (1) The date and content of plaintiff's demand and the response by the managers or other members to the demand; or (2) why the demand should be excused as futile."

the individual plaintiffs lacked standing to maintain a derivative action to enforce the rights of the plaintiff LLCs in light of the court's conclusion that their complaint sufficiently alleged demand futility. Accordingly, we reverse the trial court's judgment dismissing, for lack of subject matter jurisdiction, the individual plaintiffs' derivative action. We disagree with the plaintiffs' second and third claims and therefore affirm the trial court's judgment dismissing, for lack of subject matter jurisdiction, the plaintiff LLCs' and the individual plaintiffs' direct actions. We decline to review the plaintiffs' fourth claim.

The following facts, as alleged in the complaint, and procedural history are relevant to our resolution of this appeal. The plaintiff LLCs owned land and rental properties (assets) in and around New Haven. The individual plaintiffs, Rubin and Gidanian, along with Rohr, for whom Rubin is alleged to have acted "under power of attorney and [by] proxy" in bringing this action, owned, either collectively or individually, the majority, 70 percent membership interest in the plaintiff LLCs. Specifically, Rubin and Gidanian collectively owned a 70 percent membership interest in E.R. Holdings, LLC, Rubin owned a 70 percent membership interest in L.E. Ventures, LLC, and Rubin and Rohr collectively owned a 70 percent membership interest in Whalley Group, LLC. Brodie was the managing member of each of the plaintiff LLCs, and he owned the remaining 30 percent membership interest in those entities.

In August, 2020, Brodie began to "convey, mortgage and sell" the assets of the plaintiff LLCs to other "downstream LLCs" that he either owned or controlled. By doing so, the plaintiffs alleged that he exceeded the scope of his statutory authority and his authority under the plaintiff LLCs' respective operating agreements. Moreover, Brodie's ultra vires acts in "purport[ing] to convey, mortgage and sell all the real estate assets

owned by each of the LLCs" have allegedly led to their dissolution.

On February 15, 2022, Rubin, Gidanian, and Rubin "under power of attorney and proxy from . . . Rohr" (collectively, individual plaintiffs), "in their individual and representative capacities as well as constituting the 70 [percent] majority voting interest in each of the [plaintiff] LLCs," and the plaintiff LLCs, commenced this civil action. They named as defendants Brodie; five business entities Brodie owns or controls and to which he conveyed the assets of the plaintiff LLCs; CoreVest and 5 Arch, which hold mortgages on several of these assets; and Levinson, who represented Brodie, both individually and in his capacity as managing member of the plaintiff LLCs, "in various legal matters . . . ."

In the first count of the complaint, the plaintiffs sought damages for Brodie's ultra vires actions and breaches of his fiduciary duties in managing the plaintiff LLCs. They alleged that Brodie exceeded the scope of his authority as manager under the LLCs' operating agreements, and that he engaged in self-dealing by causing the dissolution of the plaintiff LLCs by merging them into entities he controlled and by improperly obtaining mortgages on the assets. This allegedly caused "damages to the [individual plaintiffs] directly and/or . . . to the value of their interests in the [plaintiff] LLCs and the real estate represented to be in those LLCs . . . ."

In the second count of their complaint, the plaintiffs sought to quiet title to certain of the real estate assets that the plaintiff LLCs owned before Brodie conveyed and mortgaged them.[3] They directed this count against the Brodie defendants, CoreVest and 5 Arch.

---

[3] The plaintiffs alleged that Brodie had represented to them that E.R. Holdings, LLC, "[had]" five properties, Whalley Group, LLC, "[had]" nineteen properties, and L.E. Ventures, LLC, "[had]" two properties.

In the third count of their complaint, the plaintiffs sought to recover damages from all defendants for violating the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., by virtue of their alleged collective involvement in Brodie's sale of "all the properties in the [plaintiff] LLCs to downstream entities . . . ." They claim to have "suffer[ed] an ascertainable loss" related to the lost value of the conveyed real estate and also the "loss of use of such real estate, rentals and the time and inconvenience by the plaintiffs in attempting to secure their rightful property in the [plaintiff] LLCs for their ultimate benefit as 70 [percent] shareholders."

Finally, in the fourth count of their complaint, they alleged legal malpractice by Levinson related to his representation of Brodie, individually and in his capacity as manager of the plaintiff LLCs, with respect to the conveyances. The plaintiffs claim "damages" related thereto.

The defendants responded to the complaint by filing separate motions to dismiss. In their respective motions, the defendants claimed that the court lacked subject matter jurisdiction because the individual plaintiffs lacked standing to maintain their action. More specifically, each defendant argued that (1) the individual plaintiffs lacked standing to maintain their derivative action to enforce the rights of the plaintiff LLCs because they had not complied with § 34-271c by expressly alleging either that they had demanded that Brodie cause the plaintiff LLCs to bring an action and Brodie refused, or that the making of such demand should be excused because doing so would have been futile, and (2) the individual plaintiffs lacked standing to maintain their direct action because the injuries they alleged were solely the result of injuries the plaintiff LLCs suffered and, thus, the individual plaintiffs were not aggrieved. The Brodie defendants and Levinson also claimed in

their motions that the action should be dismissed because the plaintiffs' service of process failed to include necessary addresses and was, therefore, improper, and because the plaintiffs failed to name an indispensable party, Rohr, as a plaintiff to this action.

On August 1, 2022, the plaintiffs filed individual objections to each motion to dismiss and a global memorandum of law in support of those objections. They made three arguments with respect to standing. First, they argued that "[t]he complaint sufficiently alleges facts showing that the three plaintiff LLCs have all suffered an injury in their own right, that there is implied consent to the bringing of the suit by members having more than two-thirds interest in each of the LLCs, and that therefore they have sufficient standing to maintain a cause of action against the defendants, as an alternative to the claim that they are bringing derivatively." Second, they argued that the individual plaintiffs had standing to maintain their derivative action because the complaint sufficiently alleged that any demand on Brodie would have been futile and that any defect with respect to their allegations in that regard could be cured by repleading. Third, they argued that the individual plaintiffs had "sufficiently alleged facts that show they have suffered an injury that is 'not solely the result of an injury suffered or threatened to be suffered by' the respective plaintiff LLCs, within the meaning of [General Statutes] § 34-271" and, therefore, they had standing to maintain their direct action.

The plaintiffs also refuted the Brodie defendants' and Levinson's claims regarding insufficient service of process and the failure to name an indispensable party by claiming that "the identification of the parties by [power of attorney] and the listing of the address of their attorney is sufficient and any defect in naming the plaintiffs and their addresses is trivial and has no practical effect on the defendants' ability to respond to the complaint.

Moreover . . . Rohr is a party to this action and there-fore the defendants' claim that the complaint should be dismissed because of failure to name him as an indispensable party should be denied."

The defendants filed replies to the plaintiffs' objec-tions. With respect to standing, all of the defendants advanced three identical and distinct arguments that (1) the individual plaintiffs had not received authoriza-tion to bring this action in the name of the plaintiff LLCs and, thus, the plaintiff LLCs lacked standing to maintain their direct action, (2) the individual plaintiffs lacked standing to maintain a derivative action because they had not satisfied the statutory requirements set forth in §§ 34-271a and 34-271c, and (3) the individual plaintiffs lacked standing to maintain a direct action because they alleged to have suffered indirect injuries that were derivative of the direct injuries allegedly suf-fered by the plaintiff LLCs. The Brodie defendants and Levinson also argued that the plaintiffs' objections were untimely.

On December 23, 2022, the court, *Jongbloed, J.*, issued a memorandum of decision granting the defen-dants' motions to dismiss the plaintiffs' complaint, in its entirety, for lack of subject matter jurisdiction, upon concluding that the plaintiffs lacked standing to main-tain their claims. The court expressly identified two bases for dismissing the plaintiffs' action. First, as to "the derivative suit," the court explained that it granted the defendants' motions to dismiss "because the plain-tiffs have not fairly or adequately alleged authorization to bring suit." Second, as to the "individual plaintiffs' direct suit," the court explained that it granted the defendants' motions to dismiss "because [the individual plaintiffs'] injuries resulted solely from the injuries to the [plaintiff] LLC[s]."

The court did not address explicitly whether the plaintiff LLCs had standing to maintain their direct

action. It did, however, acknowledge that the defendants had presented three distinct challenges to the plaintiffs' standing, which included their claim that "the plaintiffs cannot maintain the action because they have not taken an official act authorizing suit . . . ."[4] Moreover, it incorporated the standards applicable to, and addressed the arguments that the defendants advanced in support of, the challenge to the plaintiff LLCs' standing to maintain their direct action into its analysis before concluding that the individual plaintiffs failed to establish that they, "as members of the LLCs, had authority to bring this action on behalf of the LLCs."

After setting forth the standard for deciding a motion to dismiss, the court addressed the plaintiffs' "derivative action" in one section of its memorandum of decision and the plaintiffs' "direct action" in another. In analyzing the viability of the "derivative action," the court addressed "futility" in one subsection and "consent" in another. With respect to "futility," the court recognized that LLC "members are allowed to maintain derivative actions to enforce the right of a limited liability company" if they "satisfy the statutory requirements set forth in . . . § 34-271a . . . [and their] pleadings

---

[4] Specifically, the court stated that "the defendants [moved] to dismiss the complaint in its entirety for lack of subject matter jurisdiction on the grounds that . . . the plaintiffs lack standing to bring a direct suit, and in the alternative, lack standing to bring a derivative suit. Specifically, the defendants argue that the plaintiffs lack standing to bring the action because they have not made a formal demand on the defendants and have failed to allege, with particularity, that such a demand would have been futile. The defendants argue that the plaintiffs have not alleged that they had consent to bring such a suit as required by statute, and by the respective operating agreements of the plaintiff business entities. The defendants assert that futility and consent cannot be inferred from the complaint, but rather must be made out with particularity on the face of the complaint. The defendants also argue that the plaintiffs' direct action is fundamentally flawed because they have not alleged an injury suffered individually as distinct from, and not solely resulting from, the injury suffered by the plaintiff business entities." (Citations omitted.)

. . . comply with § 34-271c, which states: 'In a derivative action the complaint must state with particularity: (1) The date and content of plaintiff's demand and the response by the managers or other members to the demand; or (2) *why* the demand should be excused as futile.' " (Emphasis in original.)

Because the complaint did "not explicitly state that demand would have been futile," the court considered whether, "under the [Connecticut Uniform Limited Liability Company Act (CULLCA), General Statutes § 34-243 et seq.], futility must be stated on the face of the complaint, or whether it may be inferred from the facts" as pleaded. After observing that no Connecticut appellate decisions had addressed this issue, the court "[a]ppl[ied] the reasoning" of the Superior Court in *Guiza* v. *291-293 Greenwich Avenue, LLC*, Docket No. CV-20-6046647-S, 2020 WL 6121446, *3 (Conn. Super. September 22, 2020), in which "the court found that the plaintiff's allegations satisfied the futility requirement, even where the complaint did not specifically mention futility."[5] The court reviewed the plaintiffs' allegations

---

[5] In *Guiza*, the plaintiff, Eduardo Guiza, and the defendant Marco Hernandez each owned a 50 percent interest in the defendant 291-293 Greenwich Avenue, LLC. *Guiza* v. *291-293 Greenwich Avenue, LLC*, supra, 2020 WL 6121446, *1. The defendants moved to dismiss three counts of the plaintiff's six count complaint because, they claimed, the injuries the plaintiff alleged in those counts were merely derivative of injuries the defendant LLC sustained and, thus, the plaintiff lacked standing to bring them. Id. The defendants relied upon "the principle of Connecticut jurisprudence that [an LLC's] member may not sue in an individual capacity to recover for an injury the basis of which is a wrong to a limited liability company" to support their claim. (Internal quotation marks omitted.) Id., *3. The court, however, disagreed with the defendants' construction of the plaintiff's allegations and, thus, found that this principle, although correct, was not applicable to its analysis. Id. The court concluded, instead, that CULLCA, and specifically §§ 34-271a and 34-271c, were controlling and found that, even though the complaint did not "have a paragraph that includes the words 'a demand would be futile because . . .' a reading of the complaint makes it clear as to why such a request would be futile and is sufficient to satisfy that requirement in [§ 34-271c]." Id. The court accordingly denied the defendants' motion to dismiss. Id., *4.

in the present case and determined that "the plaintiffs have alleged particularized facts from which the court can infer demand futility" and, thus, found "sufficient allegations to support a finding of futility."

The court then turned to the issue of "consent," however, and concluded that "[t]he plaintiffs' derivative action must fail . . . because they have not received authorization required by statute to bring suit on behalf of the LLCs, or authorization through the respective operating agreements." In doing so, it was persuaded by similar arguments the defendants had made in support of their claim that the plaintiff LLCs did not have standing to maintain a direct action.[6] The court quoted from General Statutes § 34-255f, which, it noted, "states in relevant part that '[i]n a [member/manager]-managed limited liability company . . . (3) [t]he affirmative vote or consent of two-thirds in interest of the members is required to: (A) Undertake an act outside the ordinary course of the company's activities and affairs,' " and it analyzed and interpreted the plaintiff LLCs' operating agreements. It observed that "[t]he operating agreements of E.R. Holdings [LLC] and L.E. [Ventures, LLC] require 'written approval' to bring suit . . . . Here, there has been no written approval. . . . The operating agreement of the Whalley Group [LLC] vests sole authority in the manager to: 'bring or defend, pay, collect, compromise, arbitrate, resort to legal action or otherwise adjust claims or demands of or against the [c]ompany.' "

The court stated that "it is conceded that no vote was taken, and written consent to bring suit on behalf of the [plaintiff] LLCs was not obtained." It explained that "[t]he plaintiffs ask the court to infer consent from

[6] The trial court arguably conflated the issue of the individual plaintiffs' standing to maintain a derivative action with the standing of the plaintiff LLCs to maintain a direct action.

the fact that the lawsuit has been brought by a majority of the [plaintiff] LLC members, but there are no allegations on the face of the complaint, that state consent was sought or received on behalf of the [plaintiff] LLCs. The requirement set forth in the statute and in the operating agreements has not been met and the court will not infer consent." The court thereafter granted in part the motions to dismiss "on this ground."[7]

The court then addressed the individual plaintiffs' "direct action." It recited "settled" precedent that an LLC "member . . . may not sue in an individual capacity to recover for an injury based on a wrong to the limited liability company"; (internal quotation marks omitted); and quoted from § 34-271 (b), which provides: "A member maintaining a direct action under this section must plead and prove an actual or threatened injury that is not solely the result of an injury suffered or threatened to be suffered by the limited liability company." It then reviewed the complaint and concluded that "each of the substantive allegations of harm . . . involves injur[ies] to the [plaintiff] LLC[s], rather than to the [individual] plaintiffs themselves." Because it found that "[t]he plaintiffs' complaint is devoid of allegations that the [individual] plaintiffs incurred harm individually," the court determined that the individual plaintiffs did not have standing to maintain their direct action and granted the defendants' motions to dismiss for this reason as well. It further specified that, "[b]ecause the

---

[7] Because the court found that the operating agreement of Whalley Group, LLC, "provides for the matter of authority to bring suit and vests sole authority in Brodie" to do so, it found that CULLCA did not apply to that analysis. It further noted, however, that, "even assuming that Brodie's alleged fraud renders the CULLCA applicable, in the absence of proof that Rubin is acting under power of attorney on behalf of . . . Rohr, Rohr's consent to the suit cannot be inferred. At oral argument, the plaintiffs' attorney conceded Rohr did not want to be a party to the action but had an interest in the suit. . . . The court cannot conclude that Rubin has consent to bring suit on behalf of Whalley Group [LLC]." (Citation omitted.)

motions to dismiss are granted based on lack of subject matter jurisdiction, the court need not address the claims regarding the failure to join an indispensable party and insufficient process."[8]

The plaintiffs filed a motion to reargue the court's decision on January 12, 2023, the defendants filed objections thereto, and, on March 7, 2023, the court issued an order denying the motion to reargue "for the reasons set forth in the objections and because the court did not overlook any principles of law or misapprehend any facts . . . ." (Citation omitted.) This appeal from the judgment of dismissal followed.[9] Additional facts and procedural history will be set forth as necessary.[10]

---

[8] The court did, however, address the issue of the timeliness of the plaintiffs' objections. In doing so, it acknowledged that the objections were filed approximately four months after the filing of the first motion to dismiss, without extensions, but it exercised its discretion and considered them, nonetheless. The defendants have not challenged on appeal the propriety of the court having done so.

[9] The plaintiffs also appealed from the court's denial of their motion to reargue the judgment of dismissal. They do not raise, however, any claims of error that are specifically related to that denial.

[10] We note that the dispute underlying the plaintiffs' complaint in this action also gave rise to a binding rabbinical arbitration proceeding in which Brodie sought to buy out the interests of Rubin and Gidanian in E.R. Holdings, LLC. The arbitration hearings occurred prior to the commencement of this action, and the decision of the arbitrators, which ordered that Rubin and Gidanian sell their interests in E.R. Holdings, LLC, to Brodie for $168,425 was issued on March 23, 2022, approximately one month after the plaintiffs initiated this action. On March 24, 2022, in this civil action, Brodie filed an application to confirm the arbitration award pursuant to General Statutes § 52-417 et seq. The defendants' motions to dismiss this civil action were filed thereafter and the parties agreed that the court should resolve the motions to dismiss prior to hearing the application to confirm. After the court granted the motions to dismiss and the plaintiffs filed this appeal, Brodie attempted to reclaim his application to confirm, and the plaintiffs objected. On November 3, 2023, the clerk issued an order indicating that no hearing would be scheduled at that time because the matter was stayed due to this pending appeal. The Brodie defendants then filed a motion to reargue in which they claimed that the automatic appellate stay did not apply to the application to confirm, the plaintiffs objected, and the court sustained their objection. The Brodie defendants then filed a motion for review of the court's decision in which they asked this court for an order

Before we address the plaintiffs' specific claims, we set forth our standard of review and general legal principles that are germane to our analysis. "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the trial court's ultimate legal conclusion and resulting [decision to] grant . . . the motion to dismiss [is] de novo. . . .

"The issue of standing implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss. . . . [I]t is the burden of the party who seeks the exercise of jurisdiction in his favor . . . clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute. . . .

"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . If a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause." (Citations omitted; internal quotation marks omitted.) *Derblom* v. *Archdiocese of Hartford*, 203 Conn. App. 197, 206–207, 247 A.3d 600 (2021), aff'd, 346 Conn. 333, 289 A.3d 1187 (2023). "In addition, because

clarifying whether Practice Book § 61-11 (a) automatically stays proceedings in the Superior Court on the pending application to confirm. We granted the motion for review and the relief requested therein and concluded that this appeal does not automatically stay proceedings before the Superior Court on the pending application to confirm the arbitration award. See *Rubin* v. *Brodie*, 225 Conn. App. 108, 314 A.3d 1066 (2024). The trial court, *Ozalis, J.*, granted that application on August 30, 2024.

standing implicates the court's subject matter jurisdiction, the issue of standing is not subject to waiver and may be raised at any time." (Internal quotation marks omitted.) *Bernblum* v. *Grove Collaborative, LLC,* 211 Conn. App. 742, 755, 274 A.3d 165, cert. denied, 343 Conn. 925, 275 A.3d 626 (2022).

"Our Supreme Court has explained that [d]ifferent rules and procedures will apply, depending on the state of the record at the time the motion [to dismiss] is filed. . . . More specifically, a court may be called on to determine whether subject matter jurisdiction is lacking on the basis of (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." (Citation omitted; internal quotation marks omitted.) *Derblom* v. *Archdiocese of Hartford,* supra, 203 Conn. App. 207. Where, as here, "a trial court decides a jurisdictional question raised by a pretrial motion to dismiss on the basis of the complaint alone, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) *Conboy* v. *State,* 292 Conn. 642, 651, 974 A.2d 669 (2009).

I

THE INDIVIDUAL PLAINTIFFS' DERIVATIVE ACTION

The plaintiffs first claim that the court improperly concluded that the individual plaintiffs, who are members of the plaintiff LLCs, lacked standing to maintain a derivative action to enforce rights of the plaintiff LLCs, given its determination that the plaintiffs satisfied the requirements of §§ 34-271a and 34-271c by sufficiently alleging that it would have been futile to demand that

Brodie, the manager of the plaintiff LLCs, cause the plaintiff LLCs to bring the action against him and other defendants.[11] They argue that the court's further determination that they also were required to allege that they had "received authorization as required by statute . . . or authorization through the [plaintiff LLCs'] respective operating agreements" to bring and maintain a derivative action "inserted a requirement that is nowhere found in the language of [the statutes], has no basis in authority or considered rationale, and would undermine the remedial purposes of [§ 34-271a] to permit members to bring such an action when the demand on the limited liability companies' managers would be futile . . . ." (Internal quotation marks omitted.)

The defendants argue in response that the court properly dismissed the derivative action because the individual plaintiffs lacked standing. Although the assertions they make to support this conclusion in their respective briefs take slightly different approaches to the same end, the defendants all maintain that the court improperly inferred demand futility from the allegations of the complaint[12] but that it properly concluded, nonetheless, that the individual plaintiffs' failure to plead that they received authorization, or consent, to bring or maintain the derivative action deprived them of standing to do so. We agree with the plaintiffs.

We begin our analysis by setting forth additional legal principles that inform our resolution of this claim. Limited liability companies were created by statute in Connecticut in 1993 when our legislature enacted the Connecticut Limited Liability Company Act (CLLCA),

---

[11] There is no dispute that the plaintiff LLCs were "manager-managed limited liability compan[ies]" as described in § 34-271a. We have confined our focus, therefore, to the rules and authorities that pertain to manager-managed LLCs, unless otherwise stated.

[12] Although each defendant has addressed this alternative ground for affirmance in their briefing, no defendant properly raised this issue by filing a preliminary statement of issues as required by Practice Book § 63-4 (a) (1) (A). At oral argument before this court, the plaintiffs' counsel confirmed

Public Acts 1993, No. 93-267, codified at General Statutes (Rev. to 1995) § 34-100 et seq. *Styslinger* v. *Brewster Park, LLC*, 321 Conn. 312, 317, 138 A.3d 312 (2016). CLLCA "establish[ed] the right to form an LLC[13] and all the rights and duties of the LLC, as well as all of the rights and duties of members . . . . It permit[ted] the members to supplement [its] statutory provisions by adopting an operating agreement to govern the LLC's affairs." (Footnote added.) Id. It also recognized "the right of the limited liability company to . . . sue and be sued." (Internal quotation marks omitted.) *Saunders* v. *Briner*, 334 Conn. 135, 158, 221 A.3d 1 (2019). CLLCA did not, however, permit LLC members to bring and maintain derivative actions to enforce the rights of LLCs, and such a right did not exist at common law. Id., 158, 163–64.

Our legislature repealed CLLCA, effective July 1, 2017; see Public Acts 2016, No. 16-97; and replaced it with CULLCA. See *Fischer* v. *People's United Bank, N.A.*, 216 Conn. App. 426, 433 n.4, 285 A.3d 421 (2022), cert. denied, 346 Conn. 904, 287 A.3d 136 (2023). CULLCA made "many changes to the laws governing limited liability companies . . . ." Conn. Judiciary & Appropriations Committees, Summary of Public Acts 2016, No. 16-97. Among other things, CULLCA established the rights of LLC members to maintain derivative actions to enforce rights of LLCs, and it set the parameters for doing so. See General Statutes §§ 34-271a through 34-271e, inclusive.[14]

that the plaintiffs are not claiming that the defendants have waived their right to raise this issue by failing to do so. We therefore reach this issue on its merits.

[13] "A limited liability company . . . is a hybrid business entity that offers all of its members limited liability as if they were shareholders of a corporation, but treats the entity and its members as a partnership for tax purposes." (Internal quotation marks omitted.) *Scarfo* v. *Snow*, 168 Conn. App. 482, 499, 146 A.3d 1006 (2016).

[14] Section 34-271a establishes an LLC member's right to maintain a derivative action and sets the parameters for how that right accrues. See footnote 2 of this opinion. General Statutes § 34-271b establishes who is a "[p]roper

Like its predecessor, CULLCA also permits LLC members to supplement its statutory provisions by adopting operating agreements. General Statutes § 34-243d (a) provides in relevant part that an LLC's operating agreement "governs: (1) Relations among the members as members and between the members and the limited liability company; (2) the rights and duties under sections 34-243 to 34-283d, inclusive, of a person in the capacity of manager; (3) the activities and affairs of the company and the conduct of those activities and affairs; and (4) the means and conditions for amending the operating agreement." Section 34-243d (b), in turn, provides: "To the extent the operating agreement does not provide for a matter described in subsection (a) of this section, the provisions of sections 34-243 to 34-283d, inclusive, govern the matter." In other words, an operating agreement will generally control the rights and obligations of an LLC, its members and/or managers in the first instance, and the provisions of CULLCA will supplement any missing provisions that the operating agreement does not address.

CULLCA does, however, place several restrictions on which of its provisions an operating agreement may vary. See General Statutes § 34-243d (c) and (d). Most notably for purposes of our analysis, "[a]n operating agreement may not . . . (11) unreasonably restrict the right of a member to maintain an action under sections 34-271 to 34-271e,[15] inclusive . . . ." (Footnote added.) General Statutes § 34-243d (c) (11).

plaintiff" for purposes of maintaining a derivative action. Section 34-271c sets forth the pleading requirements for maintaining a derivative action. See footnote 2 of this opinion. General Statutes § 34-271d establishes the right of a limited liability company named as or made a party in a derivative proceeding to appoint a special litigation committee to investigate the claims and sets the parameters for exercising that right. Finally, General Statutes § 34-271e governs proceeds and expenses attendant to derivative actions.

[15] General Statutes §§ 34-271 through 34-271e comprise part VIII of CULLCA, titled "Actions by Members." These statutes govern the rights of members to maintain direct actions to enforce their own rights, and derivative

With these principles in mind, we consider whether the court properly concluded that the individual plaintiffs, who are members of the plaintiff LLCs, lacked standing to maintain a derivative action to enforce the rights of the plaintiff LLCs. We first note that all parties agree that to have standing to bring and maintain a derivative action, the individual plaintiffs were required to satisfy the provisions of §§ 34-271a and 34-271c. They therefore agree that, before the individual plaintiffs' rights to bring a derivative action as members of the plaintiff LLCs accrued, the individual plaintiffs had to either demand that Brodie, as the manager of the plaintiff LLCs, cause the plaintiff LLCs to bring an action directly, or establish that such a demand would have been futile. All parties further agree that, for the individual plaintiffs to exercise these rights properly, they were required to state with particularity in their complaint the date and content of their demand and how Brodie responded to it, or why their failure to make a demand should be excused as futile. The defendants do not agree, however, that the court properly determined that the plaintiffs satisfied these requirements. Nor do they agree that, even if proper, the court's determination should have ended its analysis and caused it to deny the defendants' motions to dismiss the individual plaintiffs' derivative action, as the plaintiffs claim in this appeal. We address each point of contention in turn.

## A

It is undisputed that the individual plaintiffs did not demand that Brodie bring an action to enforce the rights of the plaintiff LLCs before they initiated this action. The question we must address, therefore, is whether the allegations in the complaint state "with particularity" why the individual plaintiffs' failure to make such

actions to enforce the rights of a limited liability company. See General Statutes §§ 34-271 through 34-271e.

a demand should be excused as futile. General Statutes § 34-271c. The defendants argue that, in order to satisfy the particularity requirement, the plaintiffs had to "explicitly" allege that a demand of Brodie would have been futile, and they did not. They maintain that "[f]utility 'by inference' . . . is not contemplated by [the text of § 34-271c]" but, rather, "the statutory language is clear that futility must be plead[ed], not implied." Essentially, they argue that, to allege demand futility with particularity, plaintiffs must use specific, precise terms that expressly delineate that "demand would be futile because . . . ." (Internal quotation marks omitted.) *Guiza* v. *291-293 Greenwich Avenue, LLC*, supra, 2020 WL 6121446, *3. The defendants further argue that, even if it were proper for a court to infer demand futility where it has not been alleged expressly in a complaint, the plaintiffs' allegations in this case do not support such an inference.

In response, the plaintiffs argue that, although they did not expressly plead that making a demand on Brodie would have been futile, "[p]leadings are to be interpreted to include all that is necessarily implied, and on a motion to dismiss the court should construe the complaint in a manner likely to sustain its jurisdiction . . . ." (Citations omitted.) They argue that the allegations in their complaint "are sufficiently particular to form a basis from which the trial court could have logically inferred futility of demand on . . . Brodie." We agree with the plaintiffs and conclude that the court properly determined that the complaint sufficiently alleged demand futility and that, consequently, the allegations in the complaint satisfied the pleading requirements set forth in § 34-271c.

The resolution of these arguments requires that we interpret both § 34-271c and the allegations of the complaint. "To the extent that our review requires us to

construe statutory provisions, this presents a legal question over which our review . . . is plenary." (Internal quotation marks omitted.) *Aurora Loan Services, LLC* v. *Condron*, 181 Conn. App. 248, 277, 186 A.3d 708 (2018). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . It is a basic tenet of statutory construction that [w]e construe a statute as a whole and read its subsections concurrently in order to reach a reasonable overall interpretation." (Citation omitted; internal quotation marks omitted.) *Townsend* v. *Commissioner of Correction*, 226 Conn. App. 313, 331–32, 317 A.3d 1147 (2024).

"The interpretation of pleadings is [also] a question of law for the court . . . . Our review of the trial court's interpretation of the pleadings therefore is [also] plenary. . . . Furthermore, we long have eschewed the notion that pleadings should be read in a hypertechnical manner. *Rather, [t]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically.* . . . [T]he complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory [on] which it proceeded, and do substantial justice between the parties. . . . Our reading of pleadings in a manner that advances substantial justice means that a pleading must be construed reasonably, to contain all that it fairly means, but carries with it the related proposition that it must not be contorted in such a way so as to strain the bounds of rational

comprehension." (Emphasis in original; internal quotation marks omitted.) *Stewart* v. *Old Republic National Title Ins. Co.*, 218 Conn. App. 226, 242, 291 A.3d 1051 (2023). Indeed, it is a "well settled principle that our courts do not interpret pleadings so to require the use of talismanic words and phrases." (Internal quotation marks omitted.) *Carpenter* v. *Daar*, 346 Conn. 80, 130, 287 A.3d 1027 (2023).

Section 34-271c establishes the pleading requirements for a derivative action by an LLC's member. It provides that "the complaint must state *with particularity*: (1) The date and content of plaintiff's demand and the response by the managers or other members to the demand; or (2) why the demand should be excused as futile." (Emphasis added.) General Statutes § 34-271c. The term "particularity," however, is not defined in § 34-271c, or in the definitions that CULLCA sets forth in General Statutes § 34-243a. "In the absence of a statutory definition, words and phrases in a particular statute are to be construed according to their common usage. . . . To ascertain that usage, we look to the dictionary definition of the term." (Internal quotation marks omitted.) *Considine* v. *Waterbury*, 279 Conn. 830, 837, 905 A.2d 70 (2006); see also General Statutes § 1-1 (a).

"Particularity" is commonly defined in terms of being "detailed" or "exact," as opposed to general or "universal." See Merriam-Webster's Collegiate Dictionary (11th Ed. 2011) p. 903 (defining particularity as "the quality or state of being particular as distinguished from universal . . . attentiveness to detail: EXACTNESS . . . the quality or state of being fastidious in behavior or expression"); see also Webster's Third New International Dictionary (2002) p. 1647 (defining particularity as "the quality or fact of being particular as opposed to universal . . . attentiveness to detail: precise carefulness (as

of description, statement, investigation) . . . preciseness in behavior or expression: FASTIDIOUS-NESS"); Random House Webster's Unabridged Dictionary (2d Ed. 1987) p. 1415 (defining particularity as the "quality or state of being particular . . . detailed, minute or circumstantial character, as of description or statement . . . attention to details; special care . . . fastidiousness").

In light of these definitions, and given the fact that there is no language included within § 34-271c that calls for the use of specific words or terminology, we conclude that a sufficiently detailed recitation of facts that support an inference that making a demand would have been futile and that the failure to do so should be excused will satisfy the particularity requirement in § 34-271c. Although plaintiffs may, in drafting their complaints, choose to expressly reference the terms "demand" and/or "demand futility," and explicitly delineate why they claim that a "demand should be excused as futile," the text of § 34-271c does not command that level of specificity.[16] See, e.g., *High Watch Recovery Center, Inc.* v. *Dept. of Public Health,* 347 Conn. 317, 333–34, 297 A.3d 531 (2023) ("[i]n the absence of express language in [a statute] mandating that [a] request . . . take a particular form or include certain talismanic language, we will not read any such requirement into the statute").

Indeed, there is no way to conclude, without certain talismanic language upon which to rely, that § 34-271c requires plaintiffs to expressly reference the terms "demand" or "demand futility" without creating a tension between the statute and the rules by which our courts must abide when interpreting pleadings. Because

---

[16] Although the defendants place great emphasis on the particularity requirement and argue that § 34-271c is "plain and unambiguous" in this regard, they do not offer a definition of particularity to support their claim that the allegations in the complaint fall short of this requirement.

we presume that the legislature was aware when it established the parameters for pleading a derivative action in § 34-271c that courts construe pleadings broadly and realistically, to contain all that they fairly mean; see S*tate* v. *Dabkowski*, 199 Conn. 193, 201, 506 A.2d 118 (1986) ("[w]hen the legislature acts, it is presumed to know the state of the law"); we expect that it would have used express terminology if it intended to restrict or alter this rule of construction. Thus, whether the allegations in a complaint expressly reference demand futility or not, they must be construed to allege demand futility if a sufficiently detailed recitation of facts makes it reasonable to do so. If, however, there is not a sufficiently detailed recitation of facts to support such an inference, the complaint should not be so construed, even if it includes explicit references to the terms "demand" or "futility." See *Stewart* v. *Old Republic National Title Ins. Co.*, supra, 218 Conn. App. 242; see also *Gazo* v. *Stamford*, 255 Conn. 245, 263, 765 A.2d 505 (2001) ("we look beyond the language used in the complaint to determine what the plaintiff really seeks").

We now address, therefore, whether the allegations in the plaintiffs' complaint support the inference of demand futility. The complaint names Brodie as "the primary defendant," and five business entities that he owns or controls, two finance lenders and a lawyer with whom he had business dealings, as his codefendants. The plaintiffs allege that Brodie acted "ultra vires, beyond the scope of his authority under statutes and under the provisions of the [LLCs'] operating agreements" when he conveyed, mortgaged and/or sold the plaintiff LLCs' real estate assets to some of the codefendants with assistance from the others. They allege that Brodie engaged in self-dealing, and that his and the codefendants' collective actions forced the plaintiff LLCs into dissolution. In addition, they allege that, after Brodie "illegally" merged the plaintiff LLCs into the

LLCs he owns or manages, he then attempted to "buy out" the plaintiffs' "interests at a lower price because they no longer owned real estate." They also allege that "Brodie has hidden and despite demand, not disclosed" to them books and records of both the plaintiff LLCs and the Brodie defendant LLCs. These allegations give rise to the plaintiffs' claims that Brodie breached his fiduciary duties to them and that all the defendants violated CUTPA, for which they seek a punitive damages award. They also form the basis for the plaintiffs' efforts to quiet title to the real estate assets they allege were wrongfully conveyed, and their claim that Levinson, Brodie's lawyer, committed legal malpractice related to the conveyances.

The defendants posit that "[a] plaintiff may not bootstrap allegations of futility merely by alleging that the directors participated in the challenged transaction or that they would be reluctant to sue themselves." (Internal quotation marks omitted.) The plaintiffs' allegations, however, describe far more than Brodie's mere participation in a "challenged transaction" or a situation involving a likely "reluctance" to sue himself. Rather, their allegations describe, with great detail and specificity, a series of bad acts by not only Brodie but his business associates as well. They raise questions about integrity that could tarnish reputations and negatively impact future business dealings. Moreover, they expose the defendants to the possibility of having to pay a punitive damages award. Perhaps most notably, they also describe a prior instance where the plaintiffs made a demand of Brodie, for financial documents related to the plaintiff LLCs, which he refused. There is little reason to expect that Brodie, who had already refused a seemingly more benign demand by the plaintiffs, would have been any more receptive to a demand that he effectively encourage such damning allegations by causing the plaintiff LLCs to bring an action against him and

others with whom he does business. It was therefore reasonable for the court to derive from these allegations that it would have been futile for the plaintiffs to demand that Brodie do so. See, e.g., *Guiza* v. *291-293 Greenwich Avenue, LLC*, supra, 2020 WL 6121446, *3 (inferring futility from allegations that established that "any demand which the plaintiff would make would be a demand to the company allegedly controlled by [the individual defendant] that [the individual defendant] cause the company to sue [the individual defendant] for conversion, misappropriation and statutory theft"); see also *Gazo* v. *Stamford*, supra, 255 Conn. 266 ("[i]t is an abiding principle of jurisprudence that common sense does not take flight when one enters a courtroom" (internal quotation marks omitted)). Accordingly, we conclude that the court properly determined that the plaintiffs complied with the requirements of §§ 34-271a and 34-271c by alleging in their complaint a sufficiently detailed recitation of facts that supported an inference by the court that it would have been futile to demand that Brodie bring an action in the name of the plaintiff LLCs.

## B

We now address whether the court improperly determined that the individual plaintiffs lacked standing to bring derivative claims despite its subsidiary conclusion that the plaintiffs had sufficiently alleged demand futility. The plaintiffs argue that the terms of §§ 34-271a and 34-271c exclusively govern the analysis and that the court's determination that they complied with those terms is dispositive. They argue that the court improperly imposed a requirement, not contained in the relevant statutes, that the individual plaintiffs receive "authorization" or "consent" from "the plaintiff business entities to bring a [derivative] suit," and improperly concluded they lacked standing to maintain their derivative action upon finding that they had not done so.

In response, the defendants argue that the court was required to consider §§ 34-271a and 34-271c in conjunction with the terms of the LLCs' operating agreements, and the provisions of § 34-255f, to assess the individual plaintiffs' standing to bring and maintain their derivative action, and that the court properly concluded, upon doing so, that the individual plaintiffs lacked standing because, despite demand being futile, they had "not received authorization as required by statute to bring suit on behalf of the [plaintiff] LLCs, or authorization through the respective operating agreements."[17] We agree with the plaintiffs.

As we stated previously in this opinion, §§ 34-271a and 34-271c collectively establish the right of a member or members of an LLC to bring and maintain a derivative action to enforce the rights of the LLC, as well as the parameters for doing so. This right did not previously exist under CLLCA, the predecessor to CULLCA, or at common law. See *Saunders* v. *Briner*, supra, 334 Conn. 154–55. To the extent that these statutes are remedial

---

[17] In their respective motions to dismiss and their replies to the plaintiffs' objections thereto, the defendants argued to the trial court that the individual plaintiffs lacked standing to maintain their derivative action solely on account of their alleged failure to comply with the requirements set forth in §§ 34-271a and 34-271c. In other words, they argued that the provisions of §§ 34-271a and 34-271c exclusively governed the analysis of the individual plaintiffs' standing to maintain their derivative action. It was their challenge to the plaintiff LLCs' standing to maintain their *direct action* that was predicated on an argument that the individual plaintiffs, as members of the plaintiff LLCs, had not established that they were authorized to bring the action in accordance with the operating agreements and/or statutory authority. Although we recognize that, generally, " '[t]he theory upon which a case is tried in the trial court cannot be changed on review, and an issue not presented to or considered by the trial court cannot be raised for the first time on review' "; *J. M.* v. *E. M.*, 216 Conn. App. 814, 823, 286 A.3d 929(2022); " 'the issue of standing is not subject to waiver and may be raised at any time.' " *Bernblum* v. *Grove Collaborative, LLC*, supra, 211 Conn. App. 755. Moreover, we further recognize that the defendants' departure from what they argued in the trial court appears to be responsive to the manner in which the court addressed the standing issues in its decision.

in nature, they should be construed liberally in favor of those whom the law is intended to protect, i.e., individual members of an LLC seeking to maintain a derivative action to enforce the rights of the LLC where the LLC's manager has refused, or will likely refuse, to do so. See *Hernandez* v. *Apple Auto Wholesalers of Waterbury, LLC*, 338 Conn. 803, 815, 259 A.3d 1157 (2021); see also *Zoning Commission* v. *Fairfield Resources Management, Inc.*, 41 Conn. App. 89, 113, 674 A.2d 1335 (1996) (approving definition of "remedial statute as one designed to correct an existing law, redress an existing grievance, or introduce regulations conducive to the public good, and [are] generally to be liberally construed" (internal quotation marks omitted)).

There is no language in the text of either § 34-271a or § 34-271c that requires a member of an LLC to secure "authorization" or "consent" from anyone before his or her right to bring a derivative action accrues. See footnote 2 of this opinion. "[I]t is a well settled principle of statutory construction that the legislature knows how to convey its intent expressly . . . or to use broader or limiting terms when it chooses to do so." (Internal quotation marks omitted.) *Costanzo* v. *Plainfield*, 344 Conn. 86, 108, 277 A.3d 772 (2022). "[W]here a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed." (Internal quotation marks omitted.) *Demarco* v. *Charter Oak Temple Restoration Assn., Inc.*, 226 Conn. App. 335, 342, 317 A.3d 1137, cert. denied, 349 Conn. 923, A.3d    (2024).

Although the legislature did not include an "authorization" or "consent" requirement when it drafted the CULLCA provisions that govern the right of LLC members to bring and maintain a derivative action, it did

expressly reference elsewhere in the same statutory scheme the need for "consent" as a predicate to various acts taken by the LLC in pursuit of its activities or affairs. Section 34-255f, which establishes the parameters for the "[m]anagement of a limited liability company," expressly provides that, in member-managed limited liability companies, "[m]atters in the ordinary course of the activities of the company shall be decided by the affirmative vote *or consent of a majority in interest of the members*." (Emphasis added.) General Statutes § 34-255f (b) (2). Likewise, in both member-managed and manager-managed limited liability companies, "[t]he affirmative vote or *consent of two-thirds in interest of the members* is required to: (A) Undertake an act outside the ordinary course of the company's activities and affairs; or (B) approve a transaction under the Connecticut Entity Transactions Act," and "[t]he affirmative vote or *consent of all of the members* is required to amend the operating agreement or to amend the certificate of organization." (Emphasis added.) General Statutes § 34-255f (b) (3) and (4), and (c) (3) and (4). We discern from this linguistic distinction that, if the legislature intended to require individual plaintiffs to receive "authorization" or "consent" from anyone, including "the plaintiff business entities," before their right to bring and maintain a derivative action accrues, as the court found, it would have conveyed that intent expressly when it drafted §§ 34-271a and 34-271c, but it did not.

" '[A] court must construe a statute as written. . . . Courts may not by construction supply omissions . . . or add exceptions merely because it appears that good reasons exist for adding them. . . . The intent of the legislature, as this court has repeatedly observed, is to be found not in what the legislature meant to say, but in the meaning of what it did say. . . . It is axiomatic

that the court itself cannot rewrite a statute to accomplish a particular result. That is a function of the legislature.' . . .

"This rule of statutory construction has been applied vigorously in instances in which the legislature has repeatedly employed a term in other statutes, but did not use it in the provision to be construed. As our Supreme Court stated in *Viera* v. *Cohen*, 283 Conn. 412, 431, 927 A.2d 843 (2007), 'we underscore that the legislature frequently has used the term withdrawal. . . . Typically, the omission of a word otherwise used in the statutes suggests that the legislature intended a different meaning for the alternate term.' . . . 'Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed.' " (Citation omitted.) *State* v. *Richard P.*, 179 Conn. App. 676, 688, 181 A.3d 107, cert. denied, 328 Conn. 924, 181 A.3d 567 (2018). We find it significant, therefore, that the legislature did not choose to use the terms "authorization" or "consent" in §§ 34-271a and 34-271c.

Moreover, reading into the statutes such a requirement would lead to bizarre results that cannot be deemed workable under a statutory construction analysis. See *Townsend* v. *Commissioner of Correction*, supra, 226 Conn. App. 331. An LLC member has the right to bring and maintain a derivative action to account for and respond to those instances in which the individuals who have the power to cause the LLC to bring an action in the name of the LLC in the first instance will not do so because of their improper self-interests. *See Scarfo* v. *Snow*, 168 Conn. App. 482, 502, 146 A.3d 1006 (2016) (derivative actions are "designed to facilitate holding wrongdoing directors and majority shareholders to account and also to enforce corporate claims against third persons" (internal quotation marks omitted)).

Requiring a member to secure consent or authorization to bring and maintain a derivative action from such individuals, after those individuals either refused the member's demand to do so, or where making such a demand would be futile, would nullify the member's right and render the very purpose of a derivative action meaningless. See *State* v. *Webber*, 225 Conn. App. 16, 34, 315 A.3d 320 ("[i]t is a basic tenet of statutory construction that the legislature did not intend to enact meaningless provisions" (internal quotation marks omitted)), cert. denied, 349 Conn. 915, 315 A.3d 301 (2024).

The defendants seek to circumvent the legislature's silence by relying on the operating agreements for the plaintiff LLCs and § 34-255f (c) (3) as support for the consent requirement that the court read into § 34-271a. They argue, correctly, that "an LLC's operating agreement provides the rules applicable to an LLC and that the [CULLCA] statutes fill in where the operating agreement is silent." See General Statutes § 34-243d (a) and (b). They therefore posit that, because "[t]he LLC plaintiffs' operating agreements provide a procedure for initiating suit on the LLC [p]laintiffs' behalf," which, in the case of E.R. Holdings, LLC, and L.E. Ventures, LLC, includes a consent or preapproval requirement, and because "[t]here is no indication, from the text of the respective operating agreements, that this procedure is limited to direct actions," the procedure set forth in the operating agreements must apply to derivative actions by members as well. They further posit that, "if this court concludes that CULLCA, and not the . . . [plaintiff LLCs'] operating agreements, governs authorization to bring suit," the individual plaintiffs were required to comply with the consent requirement set forth in § 34-255f (c) (3) before their right to maintain their derivative action accrued.

Although we agree with the defendants that the respective operating agreements establish parameters for bringing an action in the name of the plaintiff LLCs, we do not agree that those parameters apply to the LLC members' rights in this case to bring and "maintain a derivative action to enforce the rights of a limited liability company" pursuant to § 34-271a. Nor do we agree with the defendants that the "consent requirement" set forth in § 34-255f (c) (3) informs that right if the operating agreements do not.

"To the extent that we are called on to interpret the . . . operating agreements, our standard of review is . . . well established. Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact [subject to the clearly erroneous standard of review] . . . [when] there is definitive contract language, the determination of what the parties intended by their . . . commitments is a question of law [over which our review is plenary] . . . and we must decide whether [the court's] conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Fischer* v. *People's United Bank, N.A.*, 216 Conn. App. 426, 438, 285 A.3d 421 (2022), cert. denied, 346 Conn. 904, 287 A.3d 136 (2023). Here, the individual plaintiffs challenge the court's interpretation of the relevant operating agreements as it relates to the court's ultimate conclusion that they were required to secure authorization or consent from the "plaintiff business entities" to maintain their derivative action. Thus, our review is plenary. *Fischer* v. *People's United Bank, N.A.*, supra, 438.

We begin by observing that none of the operating agreements references derivative actions by its members. In other words, the operating agreements do not expressly "provide for" derivative actions by members; General Statutes § 34-243d (b); and, thus, the provisions

of § 34-271a should exclusively govern the analysis. See General Statutes § 34-243d (b) (provisions of CULLCA apply where operating agreement does not provide matter, or matters, pertaining to relations among members and between members and limited liability company, and activities and affairs of company and conduct thereof); see also *418 Meadow Street Associates, LLC* v. *Clean Air Partners, LLC*, 304 Conn. 820, 836, 43 A.3d 607 (2012) ("if the operating agreement is silent as to the applicability of the statute, the statute controls").

Moreover, the operating agreements of E.R. Holdings, LLC, and L.E. Ventures, LLC, each establish that their manager, Brodie, is "solely responsible for the management of the [c]ompany's business" and that his "rights and powers . . . include the right and power to manage all day to day activities of the [c]ompany," subject to certain specified restrictions. His "rights and powers" include, among other things, "*commenc*[*ing*] *or defend*[*ing*] *against litigation* with respect to the [c]ompany or any assets of the [c]ompany as deemed advisable" but only if *he* first secures "written approval (which may include an email) of the aggregate members holding [s]eventy percent (70%) of the equity interest in the [c]ompany . . . ." (Emphasis added.) Both agreements are clear that "no [m]ember shall have the right . . . [t]o take part in the control of the [c]ompany business or to sign for or to bind the [c]ompany, such power being vested in the [m]anager." These provisions, as the Brodie defendants aptly recognize in their brief, "empower *the* [*m*]*anager* to bring suit only with written approval of 70 [percent] of the equity interest in the [c]ompany, but nowhere do those provisions empower anyone other than *the* [*m*]*anager* to bring suit in the [c]ompany's name, ever. To the contrary, *they prohibit other members from undertaking such activity*."[18] (Emphasis added.)

---

[18] We recognize that the Brodie defendants offer this interpretation as part of their argument that the plaintiff LLCs lack standing to maintain their

Whalley Group, LLC's operating agreement vests broader rights and powers in its manager, Brodie, by giving him the "exclusive control of the business of the [c]ompany." That operating agreement, unlike the operating agreements of E.R. Holdings, LLC, and L.E. Ventures, LLC, places no restrictions or contingencies on Brodie's ability to exercise his power to "bring or defend, pay, collect, compromise, arbitrate, *resort to legal action*, or otherwise adjust claims or demands of or against the [c]ompany . . . ." (Emphasis added.) Like the members of E.R. Holdings, LLC, and L.E. Ventures, LLC, Whalley Group, LLC's members "are not agents of the [c]ompany and do not have the authority to act for, or bind, the [c]ompany in any matter." As such, only Brodie has the power to act for and bind Whalley Group, LLC, by resorting to legal action, and its members, similarly, are prohibited from undertaking such activity.

We reiterate, however, that § 34-271a expressly authorizes an LLC's member to "maintain a derivative action to enforce the [rights of the LLC]" if the LLC's manager refuses the member's demand to do so, or if making such a demand of the manager would be futile. The operating agreements' prohibitions on members other than Brodie commencing litigation or resorting to legal action pertaining to the plaintiff LLCs, therefore, directly contradict, and cannot be reconciled with, § 34-271a. Indeed, the right that § 34-271a affords an LLC's *member* to maintain a derivative action to enforce the rights of an LLC would be completely eviscerated if the procedures set forth in the operating agreements applied to derivative actions, because the member's

direct action because the individual plaintiffs, as members of the LLCs, were not authorized to and, in fact, could not be authorized to, bring an action in the plaintiff LLCs' names. We agree with this interpretation and find that it applies to our analysis of the individual plaintiffs' standing to maintain their derivative action, as well.

right would then belong exclusively to the LLC's manager, who either already refused, or would likely refuse, the member's demand to cause the LLC to bring the action in the first instance. This unworkable construct runs afoul of the admonition set forth in § 34-243d (c) (11) that an operating agreement may not "unreasonably restrict the right of a member to maintain" a derivative action by leaving the LLC's members with no rights in this regard while, at the same time, insulating their manager from claims of wrongdoing. *See Scarfo* v. *Snow*, supra, 168 Conn. App. 502.

We conclude, therefore, that the procedures that the operating agreements of E.R. Holdings, LLC, L.E. Ventures, LLC, and Whalley Group, LLC, mandate for Brodie, their manager, to bring and maintain legal actions with respect to the plaintiff LLCs should not have informed the court's analysis of the individual plaintiffs' standing to maintain their derivative action.[19]

Similarly, the provision of § 34-255f (c) (3), which requires "[t]he affirmative vote or consent of two-thirds in interest of the members . . . to . . . [u]ndertake an act outside the ordinary course of the company's activities and affairs," should not have had any bearing on

---

[19] We note that the court relied on the fact that "[t]he operating agreements of E.R. Holdings [LLC] and L.E. [Ventures, LLC] require 'written approval' to bring suit" and its finding that "there [had] been no written approval" in accordance with that requirement in support of its conclusion that the individual plaintiffs lacked standing to maintain their derivative action. Although our broad conclusion that the court should not have relied on the operating agreements to assess the individual plaintiffs' standing to maintain their derivative action necessarily addresses this finding and conclusion, we observe, nonetheless, that, even if the procedures set forth in the operating agreements were somehow germane to the question of the individual plaintiffs' standing to maintain their derivative action, the obligation set forth in the operating agreements to secure written authorization before the right to initiate an action accrued rested with the LLCs' manager, not the LLCs' members. As we stated previously in this opinion, the operating agreements vest exclusive authority to commence legal action in the LLCs' manager, and they prohibit the members from doing so.

the court's analysis of the individual plaintiffs' standing to bring and maintain their derivative action. Sections 34-271a and 34-271c specifically pertain to "[d]erivative action[s]" by an LLC's members and, thus, the terms of those statutes take precedence over § 34-255f (c) (3)'s general reference to "act[s] outside the ordinary course of the company's activities and affairs," which, the defendants argue, includes bringing a legal action. See *FuelCell Energy, Inc.* v. *Groton*, 350 Conn. 6–7,      A.3d      (2024) ("[w]e adhere to the principle of construction that specific terms covering the given subject matter will prevail over general language of the same or another statute which might otherwise prove controlling . . . in the absence of express contrary legislative intent . . . and the principle that the legislature is always presumed to have created a harmonious and consistent body of law" (citations omitted; internal quotation marks omitted)).

As we stated previously in this opinion, there is no consent requirement in either § 34-271a or § 34-271c. All that an LLC's member must do to exercise his or her right to bring a derivative action in the name of the LLC is either to make an unheeded demand of the LLC's manager to file an action, or to establish that making such a demand would have been futile. General Statutes § 34-271a. If the member satisfies either one of those requirements, all the member must do to properly exercise the right to maintain a derivative action is "state with particularity" what the demand was, when it was made, and how the manager responded or why the failure to make a demand should be excused as futile. General Statutes § 34-271c. Because the individual plaintiffs satisfied those requirements here, they had standing to maintain their derivative action. Accordingly, the court had subject matter jurisdiction over that action and it should not have dismissed that portion of the plaintiffs' complaint. We conclude, therefore, that

the court improperly granted the defendants' motions to dismiss the individual plaintiffs' derivative actions.

## II

### THE PLAINTIFF LLCS' DIRECT ACTION

The plaintiffs next claim that the court improperly found that the plaintiffs had not "fairly or adequately alleged authorization to bring suit" and, thus, improperly concluded that the plaintiff LLCs lacked standing to maintain a direct action. In advancing this claim, the plaintiffs acknowledge that the court did not make an explicit determination with respect to their claim that they were properly authorized to bring the action in the plaintiff LLCs' names, but they argue that "such a finding is necessarily implied by the trial court's finding with respect to authorization in its ruling on the derivative claims and by the judgment." They further argue, as a matter of substance, that there was before the court "clear evidence that a vote was taken by the [plaintiff] LLCs to authorize suit," that the court's "finding that no written authorization was made for the plaintiff LLCs [to bring and maintain their action] was clearly erroneous," and that, consequently, they established the plaintiff LLCs' standing.

The Brodie defendants agree with the plaintiffs that the "memorandum of decision does not explicitly address any direct claims by the three [plaintiff] LLCs, yet dismisses the entire action." They posit, however, that "[t]he logical conclusion is that the trial court concluded that the action does not allege any direct claims by the three [plaintiff] LLCs." They further argue that, if we conclude that the complaint alleges direct actions by the plaintiff LLCs, we "should nevertheless conclude that the plaintiffs failed to establish standing to do so." CoreVest credits the court for properly "conclud[ing] that the plaintiffs failed to establish standing to maintain a direct action because they had not adequately alleged

authorization to bring suit," and Levinson agrees that the court properly concluded that the plaintiffs failed to establish their standing to bring a direct action "because they failed to plead or show that they obtained authorization from the [plaintiff LLCs] . . . ."

We conclude that the complaint reasonably may be construed to allege direct claims by the plaintiff LLCs and that the court implicitly addressed and disposed of those claims. We further conclude that, in doing so, the court properly determined that the plaintiff LLCs did not have standing to maintain their direct actions.

We begin, as we must, by construing the allegations of the complaint reasonably and in a manner most favorable to the plaintiffs. See *Conboy* v. *State*, supra, 292 Conn. 651. Further, because our doing so presents a question of law, we exercise plenary review. *Stewart* v. *Old Republic National Title Ins. Co.*, supra, 218 Conn. App. 242.

Each of the plaintiff LLCs is a plaintiff named in this action. Moreover, the plaintiff LLCs are parties to each count of the complaint and they are necessarily included within the numerous broad references made to "the plaintiffs" throughout the complaint.[20] Finally, and significantly, all of the injuries the plaintiffs allege to have sustained are, or derive from, alleged acts that left the plaintiff LLCs without any assets and rendered them valueless.[21] In the first count of the complaint,

---

[20] The defendants could have filed a request to revise the complaint that sought to have the plaintiffs articulate with more precision which plaintiffs were making which claims and/or the nature of those claims, but they did not. Such a revision would have aided the court in ascertaining the precise nature of the various claims and in determining the standing questions related thereto.

[21] The crux of the plaintiffs' claims is set forth in paragraph 3 of their complaint, which alleges that the plaintiff LLCs "have been dissolved by the act of the primary defendant . . . Brodie . . . because he has, ultra vires, beyond the scope of his authority under the statutes and under the provisions of the operating agreements, purported to convey, mortgage, and sell all the real estate and assets owned by each of the LLCs." This paragraph is incorporated by reference into each of the complaint's four counts.

for example, the plaintiffs allege that Brodie's alleged breach of his fiduciary duty to them caused damages "to the Rubin investors directly and/or . . . to the value of their interests in the three LLCs," and they seek to recoup the value of the LLCs' real estate assets accordingly. Likewise, in the second count, they seek to quiet title to the real estate assets allegedly belonging to the plaintiff LLCs. In the third count, they claim damages for alleged CUTPA violations related to the value of the plaintiff LLCs' real estate assets, as well as for loss of use, rentals and the inconvenience of their attempts to resecure "their rightful property in the LLCs . . . ." Finally, in the fourth count, they allege an obligation by the "LLCs themselves" to pay back certain sums occasioned by Levinson's alleged legal malpractice. For these reasons, the complaint is reasonably construed, in part, to state direct claims by the plaintiff LLCs to recover damages for injuries they allegedly sustained at the hands of the defendants. See, e.g., *Bernblum* v. *Grove Collaborative, LLC*, supra, 211 Conn. App. 756 (confirming that limited liability company has power to sue in its own name).

We next construe the court's memorandum of decision to determine whether the court considered and resolved the plaintiff LLCs' direct claims. It is well settled that "a judicial opinion must be read as a whole, without particular portions read in isolation, to discern the parameters of its holding. . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The construction of a judgment is a question of law for the court. . . . As a general rule, judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment. . . . The judgment should admit of a consistent construction as a whole. . . . To determine the meaning of a judgment, we must ascertain

the intent of the court from the language used and, if necessary, the surrounding circumstances." (Citations omitted; internal quotation marks omitted.) *Iadanza* v. *Toor*, 226 Conn. App. 736, 749–50,     A.3d    (2024).

Although the court expressly referenced only its dismissals of the "derivative suit" and "the individual plaintiffs' direct suit" in its memorandum of decision, it plainly acknowledged that the defendants had raised three distinct challenges to standing, which included their claim that the plaintiff LLCs lacked standing to maintain their direct action "because they have not taken an official act authorizing suit . . . . " Moreover, even though the court addressed this claim within the "derivative action" section of its discussion, it addressed the concepts of demand futility, which the defendants raised in relation to their challenge to the individual plaintiffs' standing to maintain their derivative action, and "consent" or authorization, which the defendants raised in relation to their challenge to the plaintiff LLCs' standing to maintain their direct action, separately. Finally, it dismissed the entire action on the basis of lack of subject matter jurisdiction. To do so, the court would have had to dispose of the three distinct challenges to standing it recognized and conclude, in doing so, that the plaintiff LLCs lacked standing to maintain their direct action. We therefore address the plaintiffs' challenge to the propriety of the court's conclusion in this regard.

The plaintiffs argue that they established the plaintiff LLCs' standing to maintain their direct action because they attached to their complaint "clear evidence that a vote was taken by the LLCs to authorize suit." We disagree.

At the outset, we observe that the court predicated its conclusion regarding the plaintiff LLCs' standing on its determination that "[t]he operating agreements of

E.R. Holdings, [LLC] and L.E. [Ventures, LLC] clearly delineate the need to seek written consent to authorize suit which was not established here," and, similarly, that the plaintiffs had not established consent to bring suit in the name of Whalley Group, LLC, in accordance with § 34-255f. Although we agree with the court that consent or authorization is a necessary prerequisite to bringing a direct action in the name of the plaintiff LLCs, at least insofar as E.R. Holdings, LLC, and L.E. Ventures, LLC, are concerned, we part ways with the court to the extent that its determination suggests that the individual plaintiffs would have had the right to initiate an action in the name of the plaintiff LLCs if they had received that consent and that, consequently, the plaintiff LLCs would have had standing to maintain it. Even so, we agree with the court's conclusion that the plaintiff LLCs did not have standing to maintain their direct action. See *Tracey* v. *Miami Beach Assn.*, 216 Conn. App. 379, 396 n.19, 288 A.3d 629 (2022) ("it is axiomatic that [an appellate court] may affirm a proper result of the trial court for a different reason" (internal quotation marks omitted)), cert. denied, 346 Conn. 919, 291 A.3d 1040 (2023).

Our resolution of this issue is dependent upon the interpretation of the operating agreements of E.R. Holdings, LLC, L.E. Ventures, LLC, and Whalley Group, LLC, that we articulated in part I B of this opinion. See General Statutes § 34-243d (a) (providing that operating agreements govern, among other things, relations between members and limited liability company, rights and duties of manager and activities and affairs of company and conduct thereof). As we explained, all three operating agreements establish that the respective LLC members do not have the authority to bring or maintain any action by, or in the name of, the plaintiff LLCs. Only the LLCs' manager, Brodie, has the power to act for, and bind each LLC, and only Brodie can "commence

. . . litigation" in the name of E.R. Holdings, LLC, and L.E. Ventures, LLC, and "resort to legal action" in the name of Whalley Group, LLC. To exercise his power to do so under the operating agreements of E.R. Holdings, LLC, and L.E. Ventures, LLC, it is Brodie who requires "written approval (which may include an email) of the aggregate members holding [s]eventy percent (70%) of the equity interest in the [c]ompany," whereas his power to do so under Whalley Group, LLC's operating agreement is unrestricted. As such, even if the individual plaintiffs, as members of the LLCs, had received authorization, they would not have been empowered to initiate a direct action in the name of the plaintiff LLCs. Because the individual plaintiffs, and not Brodie, initiated the direct action by the plaintiff LLCs, the plaintiff LLCs lacked standing to maintain it. We therefore affirm the judgment in this regard.

## III

### THE INDIVIDUAL PLAINTIFFS' DIRECT ACTION

The plaintiffs next claim that the court improperly concluded that the individual plaintiffs lacked standing to maintain their direct action because they had not alleged "direct harm to themselves which is not solely the result of the harm done upon the LLCs." They argue that individual members "can maintain an action even if it is related to an injury suffered by the LLC and even if [it] results from the same *actions*, provided that it is not solely the result of an *injury* to the LLC." (Emphasis in original.) They maintain that they "adequately plead[ed] injuries suffered by them directly that were 'not solely' injuries suffered by the plaintiff LLCs." The defendants argue, in response, that the direct claims brought by the individual plaintiffs belong to the plaintiff LLCs, and the individual plaintiffs had no standing to pursue them. They argue that "the substantive allegations of harm contained in the plaintiffs' complaint

[involved] injur[ies] to the [plaintiff LLCs]" and the individual plaintiffs merely allege derivative injuries they have no standing to assert. We agree with the defendants.

We are guided by the same standards and legal principles regarding standing, CULLCA, statutory interpretation and construction of pleadings upon which we relied in the preceding parts of this opinion. We further observe the well settled common-law rules that, generally, "a plaintiff lacks standing unless the harm alleged is direct rather than derivative or indirect. . . . [I]f the injuries claimed by the plaintiff are remote, indirect or derivative with respect to the defendant's conduct, the plaintiff is not the proper party to assert them and lacks standing to do so. [If], for example, the harms asserted to have been suffered directly by a plaintiff *are in reality derivative of injuries to a third party*, the injuries are not direct but are indirect, and the plaintiff has no standing to assert them. . . .

"The requirement of directness between the injuries claimed by the plaintiff and the conduct of the defendant also is expressed, in our standing jurisprudence, by the focus on whether the plaintiff is the proper party to assert the claim at issue. In order for a plaintiff to have standing, it must be a proper party to request adjudication of the issues. . . .

"It is axiomatic that [a] limited liability company is a distinct legal entity whose existence is separate from its members. . . . [It] has the power to sue or to be sued in its own name . . . or may be a party to an action brought in its name by a member or manager. . . . *A member or manager, however, may not sue in an individual capacity to recover for an injury based on a wrong to the limited liability company.*" (Citations omitted; emphasis in original; internal quotation marks omitted.) *Bernblum* v. *Grove Collaborative, LLC,*

supra, 211 Conn. App. 756–57; see also, e.g., *Channing Real Estate*, *LLC* v. *Gates*, 326 Conn. 123, 138, 161 A.3d 1227 (2017) (member of limited liability company cannot recover for injury allegedly suffered by member's company and, accordingly, lacks standing to bring claim in individual capacity).

The legislature enacted § 34-271[22] as part of CULLCA, against this common-law backdrop. See *Considine* v. *Waterbury*, supra, 279 Conn. 844 ("the legislature is presumed to be aware of prior judicial decisions involving common-law rules" (internal quotation marks omitted)). Section 34-271 establishes that an LLC member may maintain a direct action "against another member, a manager or the limited liability company to enforce *the member's rights* and otherwise protect *the member's interests*" if the member "plead[s] and prove[s] an actual or threatened injury that is not solely the result of an injury suffered or threatened to be suffered by the limited liability company." (Emphasis added.) General Statutes § 34-271 (a) and (b).[23]

---

[22] General Statutes § 34-271 provides: "(a) Subject to subsection (b) of this section, a member may maintain a direct action against another member, a manager or the limited liability company to enforce the member's rights and otherwise protect the member's interests, including rights and interests under the operating agreement or sections 34-243 to 34-283d, inclusive, or arising independently of the membership relationship.

"(b) A member maintaining a direct action under this section must plead and prove an actual or threatened injury that is not solely the result of an injury suffered or threatened to be suffered by the limited liability company."

[23] We note that the plaintiffs contend that the common-law rule that preceded the enactment of § 34-271, which they claim required an LLC member to demonstrate "a specific, personal, and legal interest separate from that of the LLC" to have standing to bring and maintain a direct action; (internal quotation marks omitted); is more restrictive than the rule prescribed in § 34-271, which was enacted as part of CULLCA. They claim that the use of the phrase "not solely the result of" in § 34-271 (b) "changes the threshold requirement for a cause of action on behalf of an individual member from one requiring the LLC's member's injury to be wholly 'separate' from the LLC's injury, to one that can be suffered by the LLC as well, provided that the member suffers the injury in some individual capacity." This backdrop forms the basis for the argument they make on appeal that individual members "can maintain an action even if it is related to an injury suffered by

The crux of the plaintiffs' claims is that the primary defendant, Brodie, with assistance from his codefendant business associates, conveyed and sold all of the real estate assets belonging to the plaintiff LLCs, that these actions forced the plaintiff LLCs into dissolution, and that the plaintiffs were injured as a result. The plaintiff LLCs owned the real estate assets that were alleged to have been wrongfully conveyed, however, and the plaintiff LLCs would have been the direct beneficiaries of any appreciation in value or income that those assets generated. Although the individual plaintiffs allege that they were damaged "directly" as a result of the defendants' alleged misdeeds, any benefits they had and would have received had the real estate assets not been conveyed and if the plaintiff LLCs were not dissolved, would have flowed to them only through the plaintiff LLCs. As such, if there were injuries to the individual plaintiffs, those injuries were sustained by the plaintiff LLCs in the first instance and by the individual plaintiffs in the second. In other words, their alleged injuries were "solely the result of [injuries] suffered . . . by" the plaintiff LLCs, and the individual plaintiffs, therefore, lacked standing to maintain their direct action. General Statutes § 34-271 (b); see also, e.g., *Scarfo* v. *Snow*, supra, 168 Conn. App. 504 (LLC member may not bring action in individual capacity to recover for injuries that are result of injuries company has suffered); *Padawer* v. *Yur*, 142 Conn. App. 812, 817, 66 A.3d 931 (same), cert. denied, 310 Conn. 927, 78 A.3d 146 (2013); *O'Reilly* v. *Valletta*, 139 Conn. App. 208, 216, 55 A.3d 583 (2012) (same), cert. denied, 308 Conn. 914, 61 A.3d 1101 (2013); *Wasko* v. *Farley*, 108 Conn.

the LLC and even if [it] results from the same *actions*, provided that it is not solely the result of an *injury* to the LLC." (Emphasis in original.) Because we conclude that the injuries that the individual plaintiffs have alleged in this action *are* "solely the result of [injuries] to the LLC[s]," we do not address the propriety of this proffered distinction.

App. 156, 170, 947 A.2d 978 (same), cert. denied, 289 Conn. 922, 958 A.2d 155 (2008).

IV

The plaintiffs' final claim is that the court's failure to treat the defendants' motions to dismiss as motions to strike to allow them to cure "any pleading defect by repleading" was improper. We decline to review this claim.

The sole basis the plaintiffs offer to support this claim is their assertion that, "[i]f the court wished the plaintiffs to say the magic words that 'demand would be futile because Brodie is a defendant,' then it should treat any such pleading defect as it would a motion to strike and allow the plaintiffs the opportunity to replead." In fact, we have concluded that those "magic words" were not necessary and that the court properly inferred demand futility from the detailed recitation of facts that the plaintiffs alleged. Consequently, we need not consider this claim.

In sum, we conclude that the court properly determined that the plaintiff LLCs and the individual plaintiffs lacked standing to maintain their direct actions and, accordingly, properly dismissed those actions for lack of subject matter jurisdiction. We therefore affirm the judgment in those regards. We further conclude, however, that the court improperly determined that the individual plaintiffs lacked standing to maintain a derivative action to enforce the rights of the plaintiff LLCs when their complaint sufficiently alleged demand futility, and we therefore reverse the judgment insofar as the court dismissed the individual plaintiffs' derivative action for lack of subject matter jurisdiction and remand the case for further proceedings.[24]

[24] In accordance with this remand, we direct the trial court to address the additional claims that the Brodie defendants and Levinson made in support of dismissal regarding the failure to join Rohr as an indispensable party and insufficient service of process. Although we acknowledge that the Brodie defendants have advanced the arguments in their brief to this

The judgment is reversed with respect to the dismissal of the individual plaintiffs' derivative action for lack of subject matter jurisdiction and the case is remanded for further proceedings consistent with this opinion; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

court that (1) Rohr is not a party to this action and that the plaintiffs had not established their authority to act on his behalf by proxy, and (2) this court should dismiss all or some of the plaintiffs' action due to insufficiency of process insofar as it failed to include Rubin's address, the court made no express findings with respect to these issues. As such, the court's statements regarding the absence of proof that Rubin was acting under power of attorney for Rohr and the assertion by the plaintiffs' counsel that Rohr did not want to be a party to this action, which were made in the context of its assessment of the plaintiffs' authority to maintain their actions, are of no import; see footnote 7 of this opinion; and we cannot find facts in the first instance. See *In re Oreoluwa O.*, 321 Conn. 523, 540–41 n.9, 139 A.3d 674 (2016) ("[I]t is elementary that neither [the Supreme Court] nor the Appellate Court can find facts in the first instance. . . . [A]n appellate court cannot find facts or draw conclusions from primary facts found, but may only *review* such findings to see whether they might be legally, logically and reasonably found . . . ." (Emphasis in original; internal quotation marks omitted.)).